

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JOE WESSON,** | § | |
| Plaintiff, | § | |
| v. | § | No. 3:14-CV-4325-L |
| **CITY OF DALLAS and** | § | |
| **JESUS MARTINEZ,** | § | |
| Defendants. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is Motion Pursuant to Rule 12(b)(6) to Dismiss the Plaintiff's Claims Alleged Against It in the Plaintiff's First Amended Complaint ("Motion to Dismiss") [D.E. 22] filed by the City of Dallas ("Defendant"). This motion has been referred to the United States Magistrate Judge for hearing, if necessary, and recommendation. *See* Order of Reference [D.E. 24]. Upon consideration, the undersigned respectfully recommends that the Motion to Dismiss [D.E. 22] be GRANTED in part and DENIED in part.

### BACKGROUND

Plaintiff Joe Wesson ("Plaintiff") brings this suit pursuant to Title 42, United States Code, Section 1983 ("Section 1983") and Texas state law alleging excessive force, failure to train, false arrest, negligence, and gross negligence against Defendant and Dallas police officer Jesus Martinez ("Officer Martinez"). *See* Am. Compl. [D.E. 5 at 9-15]. Plaintiff alleges that the Dallas City Counsel delegated the authority to set policies, including the training of the Dallas police officers, and that Chief of Police, David O. Brown failed his duty to implement and/or enforce the policies, practices, and procedures for the Dallas Police Department which led to the violation of Plaintiff's rights. *See id.* [D.E. 5 at 1].

Plaintiff states in his Amended Complaint that on or about June 8, 2014, he was walking to

the 7-Eleven located near the parking lot between Commerce Street and Main Street when Officer Martinez began to follow him in his police vehicle. *See id.* [D.E. 5 at 3]. Plaintiff states that when he asked Officer Martinez if everything was okay, he did not receive a response, but that Officer Martinez soon after stated, "I will see you when you mess up, and I will kill you." *See id.* [D.E. 5 at 3]. Plaintiff states that he began to feel afraid, because while Officer Martinez made threatening statements to him in the past, those threats were not as serious in nature as this one. *See id.* [D.E. 5 at 4].

Plaintiff states that after Officer Martinez followed him for about 15 minutes in his police vehicle, he exited the vehicle and asked, "do you want to follow me down to Headquarters so I can complain on you?" *See id.* [D.E. 5 at 4]. Plaintiff states that before he could respond, Officer Martinez stated "I got your black ass now," and sprayed him in the face with pepper spray/mace. *See id.* [D.E. 5 at 4, 8]. Plaintiff states that Officer Martinez then tackled him to the ground, hit him repeatedly with his baton, and placed Plaintiff's hands behind his back for no lawful reason. *See id.* [D.E. 5 at 4]. Plaintiff states that Officer Martinez squeezed handcuffs extremely tight around his wrists and pulled his arms over his head, causing bodily injury. *See id.* [D.E. 5 at 4]. Plaintiff states that Officer Martinez kneed him in the back and hit him repeatedly in the head with his baton. *See id.* [D.E. 5 at 4]. Plaintiff states that he screamed for help due to the pain he experienced from Officer Martinez's conduct. *See id.* [D.E. 5 at 4]. Plaintiff states that Officer Martinez was captured on video trying to break his arm, Officer Martinez continued to beat him after the other officers arrived on the scene, and that one of the other officers on the scene was seen on video waving at the bystander recording the incident, rather than trying to provide Plaintiff assistance. *See id.* [D.E. 5 at 4].

Plaintiff states that he was charged with panhandling and resisting arrest and was taken to the Dallas County Jail, but that the charges filed against him were later dismissed. *See id.* [D.E. 5 at 5]. Plaintiff states that he filed a complaint with the Dallas Police Department's Internal Affairs Division, and that they released a summary of findings, after conducting an investigation, which stated the following:

> On June 8, 2014, at approximately 6:18 p.m., Officer Martinez was on patrol when he came in contact with a pedestrian that he earlier witnessed panhandling. A video of the incident, which was captured by a witness, showed Officer Martinez straddling the pedestrian who was faced down. The video captured Officer Martinez handcuffing the pedestrian and pushing his handcuffed hands and elbows upward. The video showed Officer Martinez using his right knee to pin the pedestrian's right elbow down while raising the pedestrian's left elbow and hand upward causing him severe pain. Officer Martinez holds the pedestrian in this position for approximately 40 seconds. At one point, Officer Martinez raised the pedestrian's left elbow until it touched the back of his head. During the video, the pedestrian could be heard screaming in pain. This continued for approximately 45 more seconds until cover officers arrived. Officer Martinez alleged that the pedestrian was resisting which resulted in his actions and the use of OC spray. Another independent witness observed Officer Martinez and the pedestrian exchange words and then Officer Martinez followed the pedestrian and subsequently tackled him. The witness also gave an account of the incident as described on the video and did not see any resistance. An Internal Affairs investigation concluded that Officer Martinez used unnecessary and/or inappropriate force against a citizen. Officer Martinez was arrested and charged with Official Oppression Class A Misdemeanor.

*See id.* [D.E. 5 at 5]. Plaintiff states that Officer Martinez had no probable cause or reasonable suspicion to believe that he committed a crime, and that there are eyewitnesses to the entire incident who did not observe Plaintiff engage in any illegal conduct prior to being assaulted by Officer Martinez. *See id.* [D.E. 5 at 5-6]. Plaintiff states that he sustained multiple injuries to the head and arms from Officer Martinez's attack. *See id.* [D.E. 5 at 6].

Plaintiff alleges that the City of Dallas and the Dallas Police Department have a longstanding record of not providing its officers with adequate training and of failing to prevent excessive force

3

and extrajudicial killings by its officers. *See id.* [D.E. 5 at 6]. Plaintiff states that Dallas is at the top of the list for police misconduct in the south and is ranked second nationally in police misconduct incidents. *See id.* [D.E. 5 at 6-7]. Plaintiff also states that there have been 185 police shootings in Dallas between 2002 and mid-2013, of which 58 were fatal. *See id.* [D.E. 5 at 6]. In addition, Plaintiff states that in 2013 alone, there were at least 12 Dallas police shootings and/or assaults of unarmed individuals. *See id.* [D.E. 5 at 7]. Plaintiff points out that on or about October 14, 2013, Dallas police officers shot an unarmed, mentally challenged individual, Bobby Bennett, and attempted to falsify the police report. *See id.* [D.E. 5 at 7]. Plaintiff states that the police initially stated that Bennett lunged at them, but a video recording of the incident, which later surfaced, showed otherwise, and the aggravated assault charges against Bennett were subsequently dropped. *See id.* [D.E. 5 at 7]. Plaintiff also points out that on or about October 2, 2013, two Dallas police officers approached David Blair, an unarmed individual standing outside his East Oak Cliff apartment and shot him at least 14 times for no lawful reason. *See id.* [D.E. 5 at 7]. Plaintiff further points out that on December 10, 2013, 19-year old Kelvion Walker was still in his vehicle with his hands up when a Dallas police officer shot him. *See id.* [D.E. 5 at 7]. Similar to these incidents, Plaintiff argues that Officer Martinez's use of excessive force was not justified, as there were no signs that Officer Martinez was in imminent danger or injured. *See id.* [D.E. 5 at 8]. Plaintiff contends that Officer Martinez's conduct resulted from the lack of training of the Dallas police officers, and the official custom or policy of the Dallas Police Department. *See id.* [D.E. 5 at 8]. Plaintiff argues that no reasonably competent official would conclude that Officer Martinez's conduct did not violate Plaintiff's rights. *See id.* [D.E. 5 at 8].

On May 4, 2015, Defendant filed its Motion to Dismiss. *See* Def.'s Mot. [D.E. 22].

Defendant argues that Plaintiff's Amended Complaint: (1) fails to allege municipal liability under Section 1983; (2) fails to state a plausible claim for relief arising under the Fourteenth Amendment; and (3) improperly pleads intentional torts as negligence claims. *See id.* [D.E. 22 at 11-31]. Plaintiff filed his response on May 26, 2015 arguing that: (1) Defendant misrepresents the legal standard for pleading factual allegations in civil-rights claims against a municipality; (2) Defendant offers no support for its argument that it cannot have more than one final policymaker; (3) Plaintiff has pleaded sufficient facts to allege a custom or customs that fairly represent Defendant's policy; (4) Plaintiff has pleaded sufficient facts to allege a civil-rights violation based on Defendant's failure to train its police officers; (5) Plaintiff's negligence claim against Defendant is viable under the Texas Tort Claims Act; and (6) even if the Court were to find a deficiency in Plaintiff's pleadings, dismissal is not appropriate without first affording Plaintiff an opportunity to re-plead. *See* Resp. [D.E. 25 at 7-28]. Defendant did not file a reply and the time to do so has passed.

## STANDARD OF REVIEW

### Motion to Dismiss

Under Federal Rule of Civil Procedure ("Rule") 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8(a)(2) does not require detailed factual allegations, mere labels and conclusions do not suffice. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Further, "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Under Rule 12(b)(6), a court examines pleadings by accepting all well-pleaded facts as true and viewing them in a light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr.*

*Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim has facial plausibility where the plaintiff alleges facts that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the well-pleaded facts do not allow the court to infer more than a possibility of misconduct, the complaint has only alleged, but has not shown that the pleader is entitled to the relief sought. *Id.* at 679 (citing FED. R. CIV. P. 8(a)(2)).

<u>Municipal Liability</u>

"It is well-established that a city is not liable under § 1983 on the theory of respondeat superior." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658, 694 (1978). Municipal liability under Section 1983 requires three elements: (1) a policymaker, (2) an official policy, and (3) a violation of a constitutional right where the moving force is the custom or policy. *Hampton Co. Nat'l Surety, LLC v. Tunica Cnty.*, 543 F.3d 221, 227 (5th Cir. 2008) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)).

"The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City Police*

*Dep't*, 130 F.3d 162, 167 (5th Cir. 1997). Further, "[i]solated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability." *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984). *See also Hatcher v. City of Grand Prairie*, No. 3:14-CV-432-M, 2015 WL 181763, at *7-8 (N.D. Tex. Jan. 14, 2015) ("Plaintiffs fail to allege any factual basis to support a particular policy or custom-formal or informal-that led to the constitutional violations alleged in their complaint. . . .They do not allege facts to establish any other instances where an individual has been shot or tasered for noncompliance with officer commands alone or any other information to suggest that any such conduct constitutes an unwritten custom of Grand Prairie. . . . Plaintiffs' allegations are about one incident involving Officer Bement, which they allege resulted in a constitutional deprivation, from which Plaintiffs ask the Court to infer that Grand Prairie had a *de facto* policy or customary practice of allowing excessive force by its peace officers or that Grand Prairie engaged in ratification by inaction.").

A plaintiff alleging municipal liability is also required to "identify the policy, connect the policy to the governmental entity itself, and show that his injury was incurred because of the application of that specific provision." *Id.* at *7 (citing *White v. Jackson*, No. 7:13-CV-50-O, 2014 WL 99976, at *4 (N.D. Tex. Jan. 10, 2014); *Bennett*, 728 F.2d at 767). "Requiring a plaintiff to identify the specific policy or custom and allege that the policy or custom adopted by the municipality . . . was the 'moving force' behind the constitutional violation . . . . puts a defendant on notice of the grounds on which a plaintiff's claim rests." *Henrise v. Horvath*, 174 F. Supp. 2d 493, 502 (N.D. Tex. 2001) (citing *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992)).

On the other hand, the United States Supreme Court has held that a heightened pleading standard for civil rights claims against municipalities could not be squared with the liberal notice

required under the Federal Rules, and disapproved of an argument that "a plaintiff must do more than plead a single instance of misconduct" in order to establish municipal liability under Section 1983. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 167-68 (1993) ("We think that it is impossible to square the 'heightened pleading standard' applied by the Fifth Circuit in this case with the liberal system of 'notice pleading' set up by the Federal Rules. Rule 8(a)(2) requires that a complaint include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' . . . [T]he Federal Rules do address in Rule 9(b) the question of the need for greater particularity in pleading certain actions, but do not include among the enumerated actions any reference to complaints alleging municipal liability under § 1983.").

<u>Texas Tort Claims Act</u>

"The Texas Tort Claims Act specifically states that a person having a claim under the Act may sue a governmental unit, including a city, for damages that are allowed by the Act." *Huong v. City of Port Arthur*, 961 F. Supp. 1003, 1008 (E.D. Tex. 1997) (citing TEX. CIV. PRAC. & REM. CODE § 101.025, 101.001(2)(B)). Damages against a city that are allowed by the Texas Tort Claims Act ("TTCA") are for:

> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of employment if:
>> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>> (B) the employee would be personally liable to the claimant according to Texas law; and
>
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE § 101.021.

The TTCA "provides that a governmental unit enjoys sovereign immunity for 'a claim arising out of assault, battery, false imprisonment, or any other intentional tort.'" *Butler v. City of Dall.*, No. 3:14-CV-994-B (BK), 2015 WL 8467029, at *9 (N.D. Tex. Nov. 4, 2015) (citing TEX. CIV. PRAC. & REM. CODE § 101.057(2)). "If a plaintiff pleads facts which amount to an intentional tort, no matter if the claim is framed as negligence, the claim generally is for an intentional tort and is barred by the TTCA. . . . A plaintiff cannot circumvent the intentional tort exception by couching his claims in terms of negligence." *Wright v. City of Garland*, No. 3:10-CV-1852-D, 2014 WL 1492356, at *10 (N.D. Tex. Apr. 16, 2014) (internal quotations and citations omitted). Nevertheless, a plaintiff's claim may overcome immunity if it arises out of a municipality's negligence in supervising, training, or entrusting tangible property to a police officer who engaged in the intentional conduct. *See Russell v. City of Hous.*, 808 F. Supp. 2d 969, 975 (S.D. Tex. 2011) (citing *Centamore v. City of Hous.*, 9 F. Supp. 2d 717, 725 (S.D. Tex. 1997); *Young v. City of Dimmitt*, 787 S.W.2d 50, 51 (Tex. 1990)).

## ANALYSIS

### Section 1983 Claims

Defendant argues that Plaintiff's Section 1983 claims must be dismissed because Plaintiff failed to adequately allege municipal liability by failing to plead: (1) the identity of the final policymaker; (2) facts supporting the existence of an offending city custom having the force of an official city policy; (3) sufficient facts to permit a rational inference of a policymaker's deliberate indifference; and (4) because Plaintiff's training, supervision, and discipline allegations are conclusory and are insufficient to allow an inference of liability. *See* Mot. to Dismiss [D.E. 22 at 14-23].

Plaintiff argues in his response that Defendant misrepresents the legal standard for pleading

factual allegations in civil rights claims against a municipality. *See* Pl.'s Resp. [D.E. 25 at 7]. Plaintiff points out that the United States Supreme Court recently stated that "'no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim. . . . [A] federal court may not apply a standard 'more stringent than the usual pleading requirements of Rule 8(a)' in civil rights cases alleging municipal liability'" *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014) (quoting *Leatherman*, 507 U.S. at 164); Pl.'s Resp. [D.E. 25 at 7].

Plaintiff further argues that, contrary to Defendant's suggestion throughout its motion, detailed factual allegations are not required to state a claim for civil rights violations against a municipality, but that Plaintiff is merely required to state a claim to relief that is "plausible on its face." *See id.* [D.E. 25 at 7]. Plaintiff points out that the Fifth Circuit has held that an allegation is plausible if "reasonable minds can differ" as to it veracity. *See id.* [D.E. 25 at 8] (citing *Gonzalez v. Kay*, 577 F.3d 600, 607 (5th Cir. 2009)). Plaintiff further points out that in 2011, the Southern District of Texas applied these rules in a case that involved federal civil rights allegations against a municipality where that court noted the following:

> In the context of municipal liability, as opposed to individual officer liability, it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery. Accordingly, only minimal factual allegations should be required at the motion to dismiss stage. Moreover, those allegations need not specifically state what the policy is, as the plaintiff will generally not have access to it, but may be more general. . . . "[E]ven general facts which point to prior violations by [the police department] would allow the [plaintiffs] to survive the motion to dismiss phase."

*Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 842-43 (S.D. Tex. 2011) (quoting *Hobart v. City of Stafford*, No. 4:09-CV-3332, 2010 WL 3894112, at *5 (S.D. Tex. Sept. 29, 2010)); Pl.'s Resp.

10

[D.E. 25 at 8]. Accordingly, Plaintiff argues that allegations that provide sufficient notice could include, but are not limited to, past incidents of misconduct to others, multiple harms that occurred to Plaintiff, misconduct that occurred in the open, involvement of multiple officials in the misconduct, or a specific topic of the challenged policy or training inadequacy. *See* Pl.'s Resp. [D.E. 25 at 9].

Plaintiff also argues that Defendant offers no support for its argument that there must be one final policymaker. *See id.* [D.E. 25 at 12]. Plaintiff contends that he sufficiently alleged that the policymakers responsible for his injuries are the Dallas City Council, Mayor Mike Rawlings, and Police Chief David Brown. *See id.* [D.E. 25 at 12]. Plaintiff argues that, in order to further support this allegation, he alleged the following:

> The City of Dallas funds and operates the DPD, which, along with the Dallas City Manager's office, Chief Brown and Mayor Rawlings are responsible for the implementation of the police department's budget, policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit.
>
> * * *
>
> Dallas City Councilman Dwaine Caraway confirmed in an interview to newsmakers that the Dallas City Council, and the City of Dallas had in fact delegated policy-making authority and the training of the Dallas Police Officers to Chief Brown, giving him the responsibility for setting training policies . . . .

*See id.* [D.E. 25 at 12]; Am. Compl. [D.E. 5 at 2, 6]. Plaintiff points out that Judge Toliver recently concluded in *Flanagan v. City of Dallas*, after reviewing virtually identical allegations, that "it is plausible that the City Council has more recently delegated policymaking authority to [Chief Brown] in the area of training his officers in the use of deadly force," and that these allegations were sufficient to defeat the City's motion to dismiss." *See* Findings, Conclusions, & Recommendation [D.E. 38 at 13; No. 3:13-CV-4231-M (BK)]; Order Accepting [D.E. 42; No. 3:13-CV-4231-M

(BK)]; Pl.'s Resp. [D.E. 25 at 13]. Plaintiff argues that he specifically identified several policymakers, and that it is possible that they collaborated on the City's final policies. *See* Pl.'s Resp. [D.E. 25 at 13].

With respect to Defendant's argument that Plaintiff failed to plead facts supporting the existence of an offending city custom having the force of an official city policy, Plaintiff argues that he alleged in his Amended Complaint that Defendant violated his civil rights through a department custom that encouraged officers to use excessive force. *See id.* [D.E. 25 at 15]. Plaintiff contends that he alleged the following facts to support his theory that a policy permitting excessive force was prevalent within the Dallas Police Department:

- Officer Martinez threatened Plaintiff in the past and threatened to kill him on June 8, 2014;

- Officer Martinez repeatedly beat Plaintiff with his baton and attempted to break his arm;

- when another officer arrived on the scene, he did not offer Plaintiff any assistance even though Plaintiff was screaming in pain;

- the policy of the Dallas Police Department is to shoot first and ask questions later;

- Councilman Caraway informed the media that there were training issues within the Dallas Police Department that resulted in the killing of an unarmed individual;

- Dallas is at the top of the list of police misconduct statistics in the South, along with several other cities in Texas;

- Dallas is ranked second nationally in police misconduct incidents; and

- in 2013 alone, there were at least 12 Dallas police shootings and/or assaults of unarmed individuals, including details of other shootings that took place after the incident involving Plaintiff.

Pl.'s Resp. [D.E. 25 at 16]; Am. Compl. [D.E. 5 at 3-7, 11]. Plaintiff argues that not only did he allege numerous instances of excessive force by the Dallas Police Department, he also alleged that

the department was aware of them, as evidenced by its own internal-affairs investigations. *See* Pl.'s Resp. [D.E. 25 at 18]. Plaintiff argues that, notwithstanding Defendant's repeated claims to the contrary, none of his factual allegation are conclusory. *See id.* [D.E. 25 at 18].

With respect to Defendant's argument that Plaintiff failed to plead sufficient facts to permit a rational inference of a policymaker's deliberate indifference, Plaintiff argues that Defendant offers no authority for its claim that Plaintiff was required to plead specific facts to show that Chief Brown acted with deliberate indifference. *See id.* [D.E. 25 at 18]. Plaintiff argues that the cases cited by Defendant have holdings regarding what Plaintiff will be required to prove at the summary judgment stage or at trial. *See id.* [D.E. 25 at 18-19]. Plaintiff argues that he can survive Defendant's motion to dismiss by alleging general facts that point to prior violations by the Dallas Police Department, past incidents of misconduct to others, multiple harms that occurred to Plaintiff, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy. *See id.* [D.E. 25 at 19]. Further, Plaintiff points out that Defendant made the identical argument regarding very similar factual allegations in the *Flanagan* case, and Judge Toliver concluded that the plaintiffs pled sufficient facts at the motion to dismiss stage. *See id.* [D.E. 25 at 19]; *Flanagan*, 2014 WL 4747952, at *11 ("While it is a close call, taking all of their allegations to be true, Plaintiffs have pled sufficient facts, at the motion to dismiss stage, from which one could make a reasonable inference of a persistent, widespread practice by DPD officers of using excessive force rising to the level of a custom having the force of official City policy.") (citation omitted).

With respect to Defendant's argument that Plaintiff's training, supervision, and discipline allegations are conclusory and are insufficient to allow an inference of liability, Plaintiff argues that

he alleges that Defendant failed to adopt an adequate training program to prevent its officers from using excessive force and engaging in racial profiling. *See* Pl.'s Resp. [D.E. 25 at 20]. Plaintiff points out that the Fifth Circuit noted in *Kitchen v. Dallas County* that it is "well-established" that a failure to train can give rise to civil-rights liability against a municipality, and that Judge Toliver relied on *Kitchen* in concluding in *Flanagan* that there are two ways in which a plaintiff can establish a municipality's deliberate indifference to the need for proper training: (1) demonstrate that a municipality had notice of a pattern of similar violations that were fairly similar to the events that took place; or (2) show that the Constitutional violation is the highly predictable consequence of a failure to train. *See id.* [D.E. 25 at 20]; *Flanagan*, 2014 WL 4747952, at *13; *Kitchen v. Dall. Cty.*, 759 F.3d 468, 484 (5th Cir. 2014).

Plaintiff argues that the following factual allegations in his Amended Complaint supports his theory that the Dallas Police Department failed to provide proper training to its officers:

- the year before Plaintiff's arrest, there were at least 12 shootings and/or assaults of unarmed individuals by members of the Dallas Police Department, one or more of those shootings involving an excessive number of bullets fired, or taking place after the suspect expressed his willingness to cooperate;

- an officer, who arrived at the scene and witnessed Officer Martinez's conduct, did not attempt to stop Officer Martinez or provide assistance to Plaintiff;

- one of the police officers who transported Plaintiff to jail laughed at him and stated, "I hear Jesus got you;"

- an internal affairs investigation concluded that Officer Martinez used unnecessary or inappropriate force against a civilian and he was arrested and charged with Official Oppression;

- Dallas City Councilman Dwayne Caraway acknowledged that "training issues" exist in the Dallas Police Department that resulted in the death of an unarmed individual.

*See* Pl.'s Resp. [D.E. 25 at 20]; Am. Compl. [D.E. 5 at 4-7]. Plaintiff points out that very similar

facts were deemed sufficient to state this cause of action by Judge Toliver in *Flanagan* wherein she stated the following:

> From these facts, the inference can reasonably be drawn that the City's conduct evidences "deliberate indifference to the rights of persons with whom the police come into contact." . . . Further, Plaintiffs have set forth sufficient facts in their amended complaint to adequately allege that Chief Brown was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that he also drew the inference, to wit: (1) the large number of shootings of unarmed people over the years; (2) the number of pending internal and grand jury investigations; and (3) Chief Brown's own public statement about the need for more training. . . Accordingly, Plaintiffs' failure to train claim should not be dismissed at this stage.

Pl.'s Resp. [D.E. 25 at 22]; *Flanagan*, 2014 WL 4747952, at *14. Plaintiff argues that a similar rational applies to this case.

Upon consideration of the foregoing, the undersigned finds that Plaintiff has sufficiently alleged municipal liability for his Section 1983 claims. In viewing all well-pleaded facts in a light most favorable to Plaintiff, the undersigned finds that the Amended Complaint alleges facts "to state a claim to relief that is plausible on its face." Specifically, Plaintiff alleged the following: (1) policymakers - Dallas City Council, Mayor Mike Rawlings, and Police Chief David Brown; (2) an official policy - Plaintiff alleged numerous facts to support his theory that a policy permitting excessive force was prevalent within the Dallas Police Department; and (3) a violation of a Constitutional right where the moving force is the custom or policy - Plaintiff alleged multiple instances of excessive force by the Dallas Police Department and that the department was aware of them, as evidenced by its own internal-affairs investigations and acknowledgment by Councilman Caraway that there were "training issues" in the Dallas Police Department that resulted in the death of an unarmed individual. Plaintiff has alleged facts to adequately plead deliberate indifference by

alleging the City's knowledge of the training issues and the numerous instances of excessive force, circumstances under which the need for more training would be obvious. *See Linicomn v. City of Dall.*, No. 3:14-CV-777-D, 2015 WL 5664265, at *4 (N.D. Tex. Sept. 25, 2015) ("To plausibly plead deliberate indifference, [the plaintiff] must adequately allege that in light of the duties assigned to specific officers . . . the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." (citing *Valle v. City of Hous.*, 613 F.3d 536, 543 (5th Cir. 2010))).

Furthermore, as discussed in detail above, Plaintiff has alleged sufficient facts to state claims of excessive force, false arrest, and failure to train. *See Hatcher*, 2015 WL 181763, at *5 ("To prevail on a Fourth Amendment excessive force claim in the context of an arrest or investigatory stop, a plaintiff must establish: '(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" (quoting *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005); citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000))); *O'Dwyer v. Nelson*, No. 08-30052, 2009 WL 412462, at *3 (5th Cir. Feb. 19, 2009) ("'[T]o prevail in a § 1983 claim for false arrest, a plaintiff must show that he was arrested without probable cause in violation of the Fourth Amendment.' . . . As applied to the qualified immunity inquiry, the plaintiff must show that the officers could not have reasonably believed that they had probable cause to arrest the plaintiff for any crime." (quoting *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007); citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004))); *Linicomn*, 2015 WL 5664265, at *4 ("[T]hree elements [] are required to hold the City liable under § 1983 for failure to train and supervise its police officers, *i.e.*, (1) the training procedures were

inadequate; (2) the [City's] policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused [Plaintiff's] injury." (citing *Byers v. Navarro Cty.*, 3:09-CV-1792-D, 2012 WL 677203, at *16 (N.D. Tex. Nov. 6, 2014))).

In consideration of the foregoing, the undersigned recommends that the District Court deny Defendant's motion to dismiss with respect to Plaintiff's Section 1983 claims.

### Fourteenth Amendment Claim

Defendant argues that to the extent Plaintiff is alleging a separate Fourteenth Amendment claim, Plaintiff has failed to allege a plausible claim. *See* Def.'s Mot. [D.E. 22 at 23]. Defendant points to paragraph 45 of Plaintiff's Amended Complaint wherein he states:

> Plaintiff would additionally show that such wrongful arrest was done in violation of [Plaintiff's] rights under the Fourth Amendment of the United States Constitution, as incorporated to the states by the Fourteenth Amendment, and that Plaintiff has suffered damages within the jurisdictional limits of this court as a result of the violations of their rights.

*See* Am. Compl. [D.E. 5 at 13]. Plaintiff does not address this argument in his response. However, Plaintiff does not appear to be alleging a separate Fourteenth Amendment claim, but merely appears to be reiterating the fact that the provisions of the Fourth Amendment are enforceable against the states through the Fourteenth Amendment. *See Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 441 (5th Cir. 2015) ("[A]lthough the Fourteenth Amendment is relevant because it applies the Fourth Amendment to the states, [Plaintiff's] claims of unlawful arrest and detention should be analyzed under the Fourth Amendment and not under the Fourteenth Amendment's Due Process Clause." (citing *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 814 (5th Cir. 2010); *Albright v. Oliver*, 510 U.S. 266, 274 (1994); *Blackwell v. Barton*, 34 F.3d 298, 302 (5th Cir. 1994); *Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003))).

### Negligence Claims

Defendant argues that: (1) it is entitled to sovereign or governmental immunity from Plaintiff's state negligence and any false arrest claims, because the underlying conduct alleged are intentional acts; (2) Plaintiff improperly pleads intentional torts as negligence, and (3) Plaintiff fails to plead negligence relative to the TTCA. *See* Def.'s Mot. [D.E. 22 at 2-3, 24-31].

Plaintiff argues that his negligence claims are viable under the TTCA. *See* Pl.'s Resp. [D.E. 25 at 24-25]. Plaintiff states that unlike federal municipal liability under Section 1983, the Supreme Court of Texas has held that a municipality does have *respondeat superior* liability under the TTCA, if the negligence of its employee is shown to have been the proximate cause of the injury. *See id.* [D.E. 25 at 25-26]. Plaintiff also argues that, notwithstanding Defendant's argument that Officer Martinez only committed an intentional tort, the available case law reflects a disagreement. *See id.* [D.E. 25 at 26]. Plaintiff points out that in *City of Lubbock v. Nunez*, 279 S.W.3d 739, 743 (Tex. App.-Amarillo 2007), the Texas Seventh Court of Appeals denied a city's attempt to dismiss claims arising from a police officer's alleged improper use of a taser, concluding that the officer took "intentional actions," but intended only to prevent harm to the bystanders and bring the plaintiff into compliance. *See* Pl.'s Resp. [D.E. 25 at 26]. Because such facts if pleaded, would state a claim against Defendant, Plaintiff asks that he be given an opportunity to re-plead in the event that the Court finds that he did not plead valid negligence claims against Defendant. *See id.* [D.E. 25 at 26].

As discussed by Judge Toliver in *Butler v. City of Dallas*, "[a]t this stage of the proceedings, the undersigned cannot say with certainty that a claim against the City for negligent supervision, training or the like, which does not 'arise from' Officer [Martinez]'s alleged actions, is entirely implausible." *Butler*, 2015 WL 8467029, at *9 (citing *Twombly*, 550 U.S. at 570; *Russell*, 808 F.

18

Supp. 2d at 975 (denying motion to dismiss negligence claim against a municipality on the basis that the plaintiff's claims did not arise from the officer's intentional conduct, but out of the city's alleged negligent issuance of the handcuffs used by the officer during his sexual assault of the arrestee); *Centamore*, 9 F. Supp. 2d at 725 (finding plaintiff's allegation that the city's "conduct in entrusting tangible property combined with inadequate supervision" of the officer's use of such property was negligent and sufficient to overcome immunity); *Young*, 787 S.W.2d at 51 (disapproving the appellate court's statement that "the officer['s] intentional tortious action . . . precludes an application of [sovereign immunity]" where the plaintiff's negligent employment and entrustment claims arose "out of the alleged negligence of the city employees supervising the officer, not out of the officer's intentional tort"). Here, Plaintiff alleges that Defendant failed to sufficiently train Officer Martinez and that he misused tangible property by squeezing handcuffs around his wrists too tight and hitting him repeated in the head with his baton. *See* Am. Compl. [D.E. 5 at 4, 6, 10-13]. While the facts alleged in connection with Plaintiff's negligence claims against Defendant do not presently appear to withstand dismissal, Plaintiff has alleged enough facts which makes the undersigned believe that Plaintiff may be able to plead plausible negligence claims against Defendant, if given an opportunity to re-plead. *See id.* [D.E. 5 at 14-15]. Therefore, out of an abundance of caution, the undersigned recommends that the District Court give Plaintiff another opportunity to amend his complaint.

## **RECOMMENDATION**

For the foregoing reasons, the undersigned respectfully recommends that the Motion to Dismiss [D.E. 22] be **DENIED** with respect to Plaintiff's Section 1983 claims, and **GRANTED in part** with respect to Plaintiff's negligence claims. The undersigned recommends that the District

Court give Plaintiff an opportunity to re-plead his negligence claims, but dismiss those claims, should Plaintiff fail to amend within the time allowed by the District Court.

**SO RECOMMENDED**, January 19, 2016.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).