UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOE WESSON, § | |
|     Plaintiff, § | |
| v. § | No. 3:14-CV-4325-L |
| CITY OF DALLAS and § | |
| JESUS MARTINEZ, § | |
|     Defendants. § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendant Officer Jesus Martinez's ("Defendant") Motion to Set Aside Entry of Default ("Motion to Set Aside Default") [D.E. 23]. This motion has been referred to the United States Magistrate Judge for hearing, if necessary, and recommendation. *See* Order of Reference [D.E. 24]. Upon consideration, the undersigned respectfully recommends that the District Court GRANT the Motion to Set Aside Default [D.E. 23].

## BACKGROUND

Plaintiff Joe Wesson ("Plaintiff") brings this suit pursuant to Title 42, United States Code, Section 1983 ("Section 1983") and Texas state law alleging excessive force, failure to train, false arrest, negligence, and gross negligence against Defendant and the City of Dallas. *See* Am. Compl. [D.E. 5 at 9-15]. Plaintiff alleges that the Dallas City Counsel delegated the authority to set policies, including the training of the Dallas police officers, and that Chief of Police, David O. Brown failed his duty to implement and/or enforce the policies, practices, and procedures for the Dallas Police Department which led to the violation of Plaintiff's rights. *See id.* [D.E. 5 at 1].

Plaintiff states in his Amended Complaint that on or about June 8, 2014, he was walking to the 7-Eleven located near the parking lot between Commerce Street and Main Street when Defendant began to follow him in his police vehicle. *See id.* [D.E. 5 at 3]. Plaintiff states that when he asked

Defendant if everything was okay, he did not receive a response, but that Defendant soon after stated, "I will see you when you mess up, and I will kill you." *See id.* [D.E. 5 at 3]. Plaintiff states that he began to feel afraid, because while Defendant has made threatening statements to him in the past, those threats were not as serious in nature as this one. *See id.* [D.E. 5 at 4].

Plaintiff states that after Defendant followed him for about 15 minutes in his police vehicle, he exited the vehicle and asked, "do you want to follow me down to Headquarters so I can complain on you?" *See id.* [D.E. 5 at 4]. Plaintiff states that before he could respond, Defendant stated "I got your black ass now," and sprayed him in the face with pepper spray/mace. *See id.* [D.E. 5 at 4, 8]. Plaintiff states that Defendant then tackled him to the ground, hit him repeatedly with his baton, and placed Plaintiff's hands behind his back for no lawful reason. *See id.* [D.E. 5 at 4]. Plaintiff states that Defendant squeezed handcuffs extremely tight around his wrists and pulled his arms over his head, causing bodily injury. *See id.* [D.E. 5 at 4]. Plaintiff states that Defendant kneed him in the back and hit him repeatedly in the head with his baton. *See id.* [D.E. 5 at 4]. Plaintiff states that he screamed for help due to the pain he experienced from Defendant's conduct. *See id.* [D.E. 5 at 4]. Plaintiff states that Defendant was captured on video trying to break his arm, that Defendant continued to beat him after other officers arrived on the scene, and that one of the other officers was seen on video waving at the individual recording the incident, rather than trying to provide Plaintiff assistance. *See id.* [D.E. 5 at 4].

Plaintiff states that he was charged with panhandling and resisting arrest and was taken to the Dallas County Jail, but that the charges filed against him were later dismissed. *See id.* [D.E. 5 at 5]. Plaintiff states that he filed a complaint with the Dallas Police Department's Internal Affairs Division, and that they released a summary of findings, after conducting an investigation, which

stated the following:

> On June 8, 2014, at approximately 6:18 p.m., Officer Martinez was on patrol when he came in contact with a pedestrian that he earlier witnessed panhandling. A video of the incident, which was captured by a witness, showed Officer Martinez straddling the pedestrian who was faced down. The video captured Officer Martinez handcuffing the pedestrian and pushing his handcuffed hands and elbows upward. The video showed Officer Martinez using his right knee to pin the pedestrian's right elbow down while raising the pedestrian's left elbow and hand upward causing him severe pain. Officer Martinez holds the pedestrian in this position for approximately 40 seconds. At one point, Officer Martinez raised the pedestrian's left elbow until it touched the back of his head. During the video, the pedestrian could be heard screaming in pain. This continued for approximately 45 more seconds until cover officers arrived. Officer Martinez alleged that the pedestrian was resisting which resulted in his actions and the use of OC spray. Another independent witness observed Officer Martinez and the pedestrian exchange words and then Officer Martinez followed the pedestrian and subsequently tackled him. The witness also gave an account of the incident as described on the video and did not see any resistance. An Internal Affairs investigation concluded that Officer Martinez used unnecessary and/or inappropriate force against a citizen. Officer Martinez was arrested and charged with Official Oppression Class A Misdemeanor.

*See id.* [D.E. 5 at 5]. Plaintiff states that Defendant had no probable cause or reasonable suspicion to believe that he committed a crime, and that there are eyewitnesses to the entire incident who did not observe Plaintiff engage in any illegal conduct prior to being assaulted by Defendant. *See id.* [D.E. 5 at 5-6]. Plaintiff states that he sustained multiple injuries to the head and arms from Defendant's attack. *See id.* [D.E. 5 at 6].

Plaintiff alleges that the City of Dallas and the Dallas Police Department have a longstanding record of not providing its officers with adequate training and failing to prevent excessive force and extrajudicial killings by its officers. *See id.* [D.E. 5 at 6]. Plaintiff states that Dallas is at the top of the list for police misconduct in the south and is ranked second nationally in police misconduct incidents. *See id.* [D.E. 5 at 6-7]. Plaintiff also states that there have been 185 police shootings in Dallas between 2002 and mid-2013, of which 58 were fatal. *See id.* [D.E. 5 at 6]. In addition,

Plaintiff states that in 2013 alone, there were at least 12 Dallas police shootings and/or assaults of unarmed individuals. *See id.* [D.E. 5 at 7]. Plaintiff points out that on or about October 14, 2013, Dallas police officers shot an unarmed, mentally challenged individual, Bobby Bennett, and attempted to falsify the police report. *See id.* [D.E. 5 at 7]. Plaintiff states that the police initially stated that Bennett lunged at them, but a video recording of the incident, which later surfaced, showed otherwise, and the aggravated assault charges against Bennett were subsequently dropped. *See id.* [D.E. 5 at 7]. Plaintiff also points out that on or about October 2, 2013, two Dallas police officers approached David Blair, an unarmed individual standing outside of his East Oak Cliff apartment and shot him at least 14 times for no lawful reason. *See id.* [D.E. 5 at 7]. Plaintiff further points out that on December 10, 2013, 19-year old Kelvion Walker was still in his vehicle with his hands up when a Dallas police officer shot him. *See id.* [D.E. 5 at 7]. Similar to these incidents, Plaintiff argues that Defendant's use of excessive force was not justified, as there were no signs that Defendant was in imminent danger or injured. *See id.* [D.E. 5 at 8]. Plaintiff contends that Defendant's conduct resulted from the lack of training Dallas police officers receive, and the official custom or policy of the Dallas Police Department. *See id.* [D.E. 5 at 8]. Plaintiff argues that no reasonably competent official would conclude that Defendant's conduct would not violate Plaintiff's rights. *See id.* [D.E. 5 at 8].

On May 21, 2015, Defendant filed his Motion to Set Aside Default arguing that good cause warrants the setting aside of the entry of default because: (a) Plaintiff will not be prejudiced; (b) Defendant has a meritorious defense; and (c) Defendant's failure to timely file an answer was due to excusable neglect given that he reasonably believed that the City of Dallas, his former employer and co-defendant in this case, was handling his defense in this case. *See* Def.'s Mot. [D.E. 23 at 2-3].

Plaintiff filed his response on June 10, 2015 arguing that Defendant's Motion to Set Aside Default should be denied, because he failed to show good cause or excusable neglect. *See* Pl.'s Resp. [D.E. 27 at 2]. Plaintiff argues that it is disingenuous for Defendant to represent to the Court that he believed that the City of Dallas would provide his legal representation in this case given that the Dallas Police Department fired him upon investigation of Defendant's use of excessive force against Plaintiff and filed criminal charges against him. *See id.* [D.E. 27 at 3-4]. Plaintiff also argues that Defendant does not have a meritorious defense due to his egregious conduct towards Plaintiff which would defeat any qualified immunity defense. *See id.* [D.E. 27 at 3-4].

## STANDARD OF REVIEW

"Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations. . . . [T]hey are available only when the adversary process has been halted because of an essentially unresponsive party." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (internal quotation and citations omitted). "Default judgments are generally disfavored and should not be granted on the claim, without more, that the defending party has failed to meet a procedural time requirement." *Stevenson v. Verizon Wireless, LLC*, No. 3:08-CV-168-G, 2009 WL 188188, at *1 (N.D. Tex. Jan 27, 2009) (citing *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000)); *see also Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (A party "is not entitled to a default judgment as a matter of right, even where the [opposing party] is technically in default."). "Courts generally have refused to enter a default judgment if the defending party has made any type of appearance in the suit by responding to the complaint." *Stevenson*, 2009 WL 188188, at * 1 (citing *Sec. & Exch. Comm'n v. Amerifirst Funding, Inc.*, No. 3:07-CV-1188-D, 2007 WL 4226921, at *2 (N.D. Tex. Nov. 29, 2007)). The entry of a default

judgment is left to the sound discretion of the court. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

A court may set aside an entry of default for good cause under Federal Rule of Civil Procedure ("Rule") 55(c). *U.S. Green Bldg. Council, Inc. v. Wardell*, No. 3:14-CV-1541-M, 2015 WL 5164068, at *2 (N.D. Tex. Sept. 1, 2015) (citing FED. R. CIV. P. 55(c); *Stelax Indus., Ltd. v. Donahue*, No. 3:03-CV-923-M, 2004 WL 733844, at *10 (N.D. Tex. Mar. 25, 2004)). "The good cause standard is a liberal one." *Id.* (citing *Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 563 (5th Cir. 2003)). In determining whether good cause has been shown, a court may consider the following: (1) whether the failure was willful or resulted from excusable neglect; (2) whether the plaintiff would be prejudiced if the default is set aside; and (3) whether the defendant presents a meritorious defense. *Id.* (citing *Effjohn Int'l Cruise Holdings, Inc.*, 346 F.3d at 563; *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992); *iLife Techs., Inc. v. ActiveCare, Inc.*, No. 3:12-CV-5161-M, 2013 WL 1943322, at *1 (N.D. Tex. May 10, 2013); *Stevenson*, 2009 WL 188188, at *2). However, a court is not required to consider all of these factors. *J&J Sports Prods., Inc. v. Moso Ventures, Inc.*, No. 3:11-CV-1767-N (BF), 2012 WL 3846536, at *2 (N.D. Tex. Aug.10, 2012) (citing *United States v. One Parcel of Real Prop.*, 763 F.2d 181, 183 (5th Cir. 1985); *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981)). Moreover, these factors are not "talismanic" and other factors may be considered. *Dierschke v. O'Cheskey*, 975 F.2d 181, 184 (5th Cir. 1992). The ultimate inquiry remains whether the defendant shows "good cause" to set aside the default. *Moso Ventures, Inc.*, 2012 WL 3846536, at *2 (citing *Dierschke*, 975 F.2d at 184).

## ANALYSIS

### Excusable Neglect

Defendant argues that his failure to timely file an answer was not willful, because he reasonably believed that the City of Dallas was aware that he was served in this case after conversations with the staff at his criminal defense attorney's office, and because he reasonably believed that the City of Dallas was handling his defense in this case. *See* Def.'s Mot. [D.E. 23 at 3]. Defendant contends that he was not made aware of the entry of default until a time close in proximity to the filing of his Motion to Set Aside Default, and that upon being made aware of the entry of default, he promptly contacted the Dallas City Attorney's office, retained counsel, and filed his Motion to Set Aside Default. *See id.* [D.E. 23 at 3-4].

Plaintiff argues in his response that Defendant's failure to answer was willful, and that it was a decision he made while he was represented by counsel. *See* Pl.'s Resp. [D.E. 27 at 5]. Plaintiff points out that, while Defendant would like to have the Court believe that he thought the City of Dallas was handling his defense in this case, he did not discuss the lawsuit with any of the City's attorneys for over two months, nor did he attach an affidavit from anyone to support his contentions, including the attorney representing him in connection with the criminal charges filed against him for the physical assault of Plaintiff. *See id.* [D.E. 27 at 2]. Further, Plaintiff contends that he is not sure how Defendant can represent to the Court that he reasonably believed that the City of Dallas would provide legal representation for him in this case, given that his employment with the Dallas Police Department was terminated because of his use of "excessive force" towards Plaintiff. *See id.* [D.E. 27 at 2].

Excusable neglect is an "elastic concept" that is not strictly limited to omissions caused by

circumstances beyond a defendant's control. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993). Excusable neglect extends to "simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Id.* at 388. Excusable neglect has been found to include late filings due to "mistake, inadvertence or carelessness and not to bad faith." *Mattress Giant Corp. v. Motor Advert. & Design, Inc.*, No. 3:07-CV-1728-D, 2008 WL 898772, at *2 (N.D. Tex. Mar. 31, 2008) (alterations and citations omitted). *See also Friedman & Feiger, LLP v. ULofts Lubbock, LLC*, No. 3:09-CV-1384-D, 2009 WL 3378401, at *2 (N.D. Tex. Oct. 19, 2009) (mistaken reliance on settlement negotiations constituted excusable neglect); *Donahue*, 2004 WL 733844, at * 10 (default was excusable where defendants were under the mistaken impression that co-defendant's counsel represented them).

Similar to *Donahue*, Defendant contends here that he was under the mistaken belief that the attorneys for the City of Dallas were providing legal representation for him in this case. While the undersigned finds persuasive Plaintiff's argument that it is unreasonable for Defendant to believe that the City of Dallas would provide legal representation for him in this case given that Defendant was fired from the Dallas Police Department upon findings that Defendant used unnecessary and/or inappropriate force against Plaintiff, e-mails submitted by Plaintiff in connection with his response appears to indicate that there may have been some confusion initially regarding whether the City of Dallas was providing legal representation for Defendant. *See* Ex. 1 [D.E. 27-1 at 3]. In this e-mail, a City of Dallas attorney, Grant Brenna stated the following on February 6, 2015, "I was mistaken about Martinez returning to the DPD. It seems there were two Jesus Martinez officers who were disciplined. One won his appeal and is back with the DPD, and one is not. The Jesus Martinez involved with this lawsuit remains terminate." *See id.* [D.E. 27-1 at 3]. Having considered the

contents of this e-mail, the undersigned does not find unreasonable Defendant's initial belief that the City of Dallas was providing legal representation for him, given the City's initial confusion regarding the identity of the officer at issue in this lawsuit. Hence, the undersigned finds that there is excusable neglect given these facts.

### Prejudice

"There is no prejudice to the plaintiff where 'the setting aside of the default has done no harm to plaintiff except to require it to prove its case.'" *Lacy v. Sitel Corp.*, 227 F.3d 290, 293 (5th Cir. 2000) (quoting *Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*, 277 F.2d 919, 921 (5th Cir. 1960)). "[M]ere delay does not alone constitute prejudice." *Id.* "[T]he plaintiff must show that the delay will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Id.* (quoting *Berthelsen v. Kane*, 907 F.2d 617, 621 (5th Cir. 1990)). Here, Plaintiff merely states that "[s]etting aside the entry of default in this case will prejudice plaintiff," and makes no allegations that the delay will result in loss of evidence, increased difficulties in discovery, or that he will suffer any other prejudice. *See* Pl.'s Resp. [D.E. 27 at 5]. Therefore, it appears that Plaintiff will not be prejudiced if Defendant's Motion to Set Aside Default is granted.

### Meritorious Defense

In order to "establish good cause, a defaulting party 'need not prove that it will likely succeed on the merits; rather, it need only establish that the evidence submitted, if proven at trial, would constitute a defense." *iLife Techs.*, 2013 WL 1943322, at *2 (quoting *Owens-Illinois, Inc. v. T&N Ltd.*, 191 F.R.D. 522, 526 (E.D. Tex. 2000)). A defendant's "allegations are meritorious if they contain 'even a hint of a suggestion' which, [if] proven at trial, would constitute a complete defense." *Moso Ventures, Inc.*, 2012 WL 3846536, at *2. "The standard for showing a meritorious

defense is not stringent because the likelihood of success is not the measure for the 'absence of meritorious defense' criterion." *Id.* (citation omitted). In *Moso Ventures*, the Court found that an assertion in a Federal Communications Act lawsuit "that the subject fight broadcasts were not shown at [Defendant's establishment]" was "at least an 'obtuse' showing of a meritorious defense. Thus, the 'absence of meritorious defense' criterion [was] lacking." *Id.* (citing *One Parcel of Real Prop.*, 763 F.2d at 183).

Defendant asserts here that: (1) he intends to assert the defenses of qualified and official immunity; (2) his actions were objectively reasonable in connection with the arrest of Plaintiff, particularly after Plaintiff resisted his attempts to arrest him; and (3) Plaintiff was "adjudged guilty" of the offense of resisting arrest, as evidenced by the documents attached as "Exhibit B" to his Motion to Set Aside Default. *See* Def.'s Mot. [D.E. 23 at 3]; Ex. B. [D.E. 23-2 at 1-3]. Given the lenient standard that Defendant needs to meet at this juncture, he has presented at least "'a hint of a suggestion' which, [if] proven at trial, would constitute a complete defense." *Moso Ventures*, 2012 WL 3846536, at *2 (citation omitted). Accordingly, Defendant has asserted a potentially meritorious defense for the purpose of establishing that the entry of default should be set aside.

## RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that the District Court **GRANT** Defendant's Motion to Set Aside Default [D.E. 23].

**SO RECOMMENDED,** January 19, 2016.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).